IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION


IMAGING RESOURCES GROUP, LLC                                      Plaintiff

VS                                                         Cause No. 4:05CV209

HEALTH MANAGEMENT ASSOCIATES INC,
d/b/a NORTHWEST MISSISSIPPI REGIONAL MEDICAL
CENTER and JASON MORRIS                                          Defendants

## ORDER

This cause comes before the court on the motion of defendant Health Management Associates, Inc. ("HMA") d/b/a Northwest Mississippi Regional Medical Center ("Northwest") for summary judgment, pursuant to Fed. R. Civ. P. 56. The court also has before it the motion of plaintiff Imaging Resources Group, LLC ("IRG") for partial summary judgment. Having considered the memoranda and submissions of the parties, the court is now prepared to rule.

On September 10, 2001, plaintiff IRG entered into an MRI Services Agreement ("the Agreement") with defendant Northwest to provide exclusive MRI services at defendant's Clarksdale, Mississippi hospital. The termination provisions of the Agreement include a handwritten modification designated as paragraph 8.4 which appears to incorporate by reference another provision of the contract providing as follows:

> 4. TERM. The initial term of this Agreement will be for thirty-six (36) months commencing on the date on which services begin ("the Commencement Date") which shall be on or about December 1, 2001. ... During months 13-~~36~~ 24 Client may terminate contract under the following terms. Termination by Client can only occur after providing notice in writing at least one hundred and twenty (120) days prior [sic] the termination date requested to IRGLLC. (Strike-out of 36 month provision in original).

After its initial execution, the Agreement was amended four times, most recently in the form of a

2004 amendment which extended the Agreement's termination date to March 1, 2009. The addendum did not alter any other provisions relating to termination of the Agreement by Northwest and specifically stated that "[t]he remaining provisions of the Agreement of September 10, 2001 remain in full force and effect." The 2004 extension of the contract notwithstanding, it is apparent that Northwest soon became interested in replacing IRG with another MRI provider.

As early as January 25, 2005, Douglas Arnold, then CEO of Northwest, communicated to IRG Vice President Mike Thomas the hospital's intent to terminate the Agreement and replace the MRI services provided by IRG with those of another provider. On June 15, 2005, Arnold executed a letter of intent outlining the Hospital's intent to take steps necessary over an eighteen month period to enter into a future MRI services agreement with Advanced Diagnostic Imaging, LLC ("ADI"), a company associated with Northwest staff physician and radiologist Dr. Jason Morris. The proposed agreement and letter of intent stated that neither would become effective or legally binding until both received approval and were executed by designated officers of HMA. Neither document was executed by any designated officer of HMA, and an MRI services agreement between Northwest and ADI was never finalized.

On September 11, 2005, Arnold e-mailed IRG Vice President Mike Thomas that Arnold had heard that IRG was filing a lawsuit against Northwest, and Arnold once again communicated his desire to facilitate the termination of the Agreement with IRG and to have IRG's MRI equipment removed. In response, Arnold received a letter dated September 14, 2005 from Thomas' counsel, Frank Thackston. In his letter, Thackston informed Arnold that a lawsuit had already been filed with this court (on August 24, 2005). According to Thackston, Northwest was

in breach of the Agreement which, he contended, allowed IRG to declare Northwest in default and seek damages under the contract's provisions. After this correspondence, Northwest was served with the complaint in this action, alleging breaches of various provisions of the Agreement. In spite of the instant litigation, IRG's MRI equipment remains on Northwest's premises, and IRG continues to perform exclusive MRI services pursuant to the Agreement.

## ANALYSIS

Plaintiff and defendants have each filed motions for partial or complete summary judgment with this court. Defendants seek a summary judgment ruling from this court stating that they have not breached the Agreement in this case. For its part, plaintiff seeks a ruling declaring that the termination provisions of the Agreement do not give Northwest the legal right to terminate the contract before the March 1, 2009 termination date agreed upon by the parties in the 2004 amendment. In the court's view, however, the issues presented to this court for resolution are not appropriately dealt with on motion for summary judgment. At this juncture, it seems more likely than not that this court would eventually conclude that the parties continue to be subject to an enforceable contract in this case, but, in the court's view, genuine issues of fact exist with regard to whether the contract has been partially breached in such a manner as would entitle plaintiff to recover some damages.

Northwest acknowledges that it has flirted very seriously with terminating the contract in this case, but it emphasizes that plaintiff is still providing exclusive MRI services at its Clarksdale hospital. The communications from defendant to plaintiff do clearly express an intent and a desire to terminate the contract, but this intent and desire appear to have been qualified by

language seeking an "agreeable" settlement of the dispute. As such, one arguable reading of defendant's actions in this case is that it clearly wished to terminate the contract with plaintiff, but that it had reservations regarding its legal right to do so and accordingly sought an amicable termination pursuant to a settlement agreement. On the other hand, plaintiff asserts that defendant's actions in executing a letter of intent to obtain ADI's services is sufficient to constitute a breach of contract and to permit plaintiff to recover the future monies owed to it under the contract.

While defendant's argument that it stopped just short of a complete breach of the contract appears somewhat compelling, it is also true that plaintiff has incurred considerable expense in defending itself against what were clearly serious efforts by Northwest to terminate the contract which it had voluntarily extended in 2004. It is not clear to this court to what extent, if any, plaintiff might have a legal right to recover for the expenses which it incurred in this regard. Presumably, any damages which plaintiff might be able to recover in this regard would be limited by the fact that defendant has permitted it to continue providing exclusive MRI services at its hospital.[1] The court's reluctance to deal with this issue on summary judgment is enhanced by the fact that the termination provision in the Agreement is rather unclear. The provision at issue includes handwritten modifications whose import is not entirely clear, and the Agreement appears to leave a considerable degree of ambiguity regarding defendant's ability to terminate the agreement without cause following the expiration of twenty-four months. It is apparent that testimony from the parties would be required to resolve this ambiguity, and any

---

[1]This court does not intend to suggest that even a partial breach of the contract has occurred in this case.

4

evaluation of the reliability of such testimony is a fact-intensive inquiry which is not appropriately performed on summary judgment.

At this juncture, the court's *inclination* is to conclude that a complete breach of the contract has not occurred in this case and to further conclude that the parties should each be required to perform their remaining obligations under the contract. It is apparent that genuine issues of fact exist in this regard, however, and the parties are entitled to have a full trial on the pending issues in this case, if they so desire. Nevertheless, the court has serious doubts regarding whether the benefits of any such trial would outweigh the expense of litigation. In the court's view, the parties would be better advised to accept that they are each most likely bound by the contract which they voluntarily extended less than a year before the present dispute arose and to either complete performance under the contract or negotiate an amicable termination thereof. At this juncture, however, the court need only conclude that neither party has established a right to summary judgment, and the parties' respective motions will therefore be denied.

It is therefore ordered that the defendants' motion [18-1] for summary judgment is denied, and plaintiff's motion for partial summary judgment [48-1] is likewise denied.

SO ORDERED this the 11th day of July, 2006.

    /s/ Michael P. Mills
    **UNITED STATES DISTRICT JUDGE**